IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **INVESTORS CAPITAL CORP.; and** <br> **OKE ANANABA,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **DUNCAN-WILLIAMS, INC.;** <br> **E-D CAPITAL, INC.;** <br><br> **Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 2006: CV 382-ID

## ANSWER OF DUNCAN-WILLIAMS, INC. AND E-D CAPITAL, INC. TO CLAIMS ASSERTED BY PLAINTIFF INVESTORS CAPITAL CORP.

Come now Defendants Duncan-Williams, Inc. and E-D Capital, Inc. and hereby answer the claims asserted by Investors Capital Corp. ("ICC"). Defendants are responding to the claims asserted by plaintiff Oke Ananaba by a separate motion to dismiss. In response to the claims asserted by ICC, Defendants state as follows:

### STATEMENT OF THE PARTIES

1.  Defendants are without sufficient information to admit or deny the allegations in paragraph 1 of the Complaint, and accordingly, deny the same and demand strict proof thereof.

2.  Defendants are without sufficient information to admit or deny the allegations in paragraph 2 of the Complaint, and accordingly, deny the same and demand strict proof thereof.

3.  Admit.

4.  Admit.

5.  Defendants are without sufficient information to admit or deny the allegations in paragraph 5 of the Complaint, and accordingly, deny the same and demand strict proof thereof.

## STATEMENT OF THE FACTS

6.  Defendants are without sufficient information to admit or deny the allegations in paragraph 6 of the Complaint, and accordingly, deny the same and demand strict proof thereof.

7.  Defendants are without sufficient information to admit or deny the allegations in paragraph 7 of the Complaint, and accordingly, deny the same and demand strict proof thereof.

8.  Admit.

9.  Defendants admit that on May 6, 2004, E-D Capital and ICC entered into a letter agreement establishing an arrangement whereby E-D Capital would purchase mortgage loans from ICC for the purpose of selling those loans to third party lenders. The letter agreement gave E-D Capital a right of first refusal on all loans submitted by ICC that conformed to certain Commercial Loan Program guidelines attached to the letter agreement. Beyond the foregoing, Defendants deny the allegations in paragraph 9 of the Complaint and demand strict proof thereof.

10. Defendants admit that Duncan Williams and ICC negotiated the "details and parameters of their agreement" and state that the agreed-upon terms were memorialized in the May 6, 2004 letter agreement. Beyond the foregoing, Defendants do not have sufficient information to admit or deny the allegations in paragraph 10 of the Complaint, and accordingly, deny the same and demand strict proof thereof.

11. Defendants admit that E-D Capital reserved funds for the purpose of effecting the transactions contemplated by the May 6, 2004 agreement. Beyond the foregoing, Defendants deny the allegations set forth in Paragraph 11 of the Complaint and demand strict proof thereof.

12. Defendants admit that their dealings were with ICC. Beyond the foregoing, Defendants do not have sufficient information to admit or deny the allegations in paragraph 12 of the Complaint and, accordingly, deny the same and demand strict proof thereof.

13. Defendants deny the allegations in paragraph 13 of the Complaint and demand strict proof thereof. E-D Capital is not a subsidiary of Duncan Williams and does not have common ownership.

14. Defendants deny the allegations in paragraph 14 of the Complaint and demand strict proof thereof.

15. Defendants are without sufficient information to admit or deny the allegations in paragraph 14 of the Complaint and, accordingly, deny the same and demand strict proof thereof.

16. Defendants admit that E-D Capital and ICC never closed any loans pursuant to the May 6, 2004 letter agreement. Beyond the foregoing, Defendants deny the allegations in paragraph 16 of the Complaint and demand strict proof thereof.

17. Defendants admit that E-D Capital and ICC never closed any loans pursuant to the May 6, 2004 letter agreement. Beyond the foregoing, Defendants deny the allegations in paragraph 17 of the Complaint and demand strict proof thereof.

18. Defendants are without sufficient information to admit or deny the allegations in paragraph 18 of the Complaint and, accordingly, deny the same and demand strict proof thereof.

19. Defendants are without sufficient information to admit or deny the allegations in paragraph 19 of the Complaint and, accordingly, deny the same and demand strict proof thereof.

20. Defendants admit that E-D Capital and ICC had disagreements about whether the loan applications ICC presented met the agreed-upon criteria. Defendants admit that Clayton reviewed some of the loan applications that ICC submitted to E-D Capital. Defendants further admit that E-D Capital agreed to reconsider a loan application upon which it previously passed if Clayton considered the application to be acceptable. Beyond the foregoing, Defendants deny the allegations in paragraph 20 and demand strict proof thereof.

21.     Defendants admit that E-D Capital and ICC never closed any loans pursuant to the May 6, 2004 letter agreement. Beyond the foregoing, Defendants deny the allegations in paragraph 21 of the Complaint and demand strict proof thereof.

22.     Defendants are without sufficient information to admit or deny the allegations in paragraph 22 of the Complaint and, accordingly, deny the same and demand strict proof thereof.

23.     Defendants admit that E-D Capital notified ICC that it wished to terminate its relationship with ICC. Defendants also admit that E-D Capital and ICC never closed any loans pursuant to the May 6, 2004 letter agreement. Beyond the foregoing, Defendants deny the allegations in paragraph 21 of the Complaint and demand strict proof thereof.

## COUNT ONE
## BREACH OF CONTRACT

24.     In response to Paragraph 24, Defendants incorporate by reference as if fully restated herein their response to each and every one of the foregoing paragraphs of this Answer and all of their affirmative defenses.

25.     Defendants admit that E-D Capital and ICC agreed to terms as set forth in the May 6, 2004 letter agreement. Beyond the foregoing, Defendants deny the allegations set forth in paragraph 25 of the Complaint and demand strict proof thereof.

26.     Defendants are without sufficient information to admit or deny the allegations in paragraph 26 of the Complaint and, accordingly, deny the same and demand strict proof thereof.

27.     Defendants admit that E-D Capital and ICC never closed any loans pursuant to the May 6, 2004 letter agreement. Beyond the foregoing, Defendants deny the allegations in paragraph 27 of the Complaint and demand strict proof thereof.

28.     Defendants deny the allegations in paragraph 28 of the Complaint and demand strict proof thereof.

## COUNT TWO
## PROMISSORY FRAUD

29. In response to Paragraph 29, Defendants incorporate by reference as if fully restated herein their response to each and every one of the foregoing paragraphs of this Answer and all of their affirmative defenses.

30. Defendants deny the allegations in paragraph 30 of the Complaint and demand strict proof thereof.

31. Defendants deny the allegations in paragraph 31 of the Complaint and demand strict proof thereof.

32. Defendants are without sufficient information to admit or deny the allegations in paragraph 32 of the Complaint and, accordingly, deny the same and demand strict proof thereof.

33. Defendants are without sufficient information to admit or deny the allegations in paragraph 33 of the Complaint and, accordingly, deny the same and demand strict proof thereof.

34. Defendants are without sufficient information to admit or deny the allegations in paragraph 34 of the Complaint and, accordingly, deny the same and demand strict proof thereof.

## COUNT THREE
## NEGLIGENCE, WANTONNESS AND/OR WILLFULNESS

35. In response to Paragraph 35, Defendants incorporate by reference as if fully restated herein their response to each and every one of the foregoing paragraphs of this Answer and all of their affirmative defenses.

36. Defendants admit that E-D Capital owed ICC a duty of reasonable care to review the loan applications ICC presented. Beyond the foregoing, Defendants deny the allegations in paragraph 36 of the Complaint and demand strict proof thereof.

37. Defendants deny the allegations in paragraph 37 of the Complaint and demand strict proof thereof.

38. Defendants deny the allegations in paragraph 38 of the Complaint and demand strict proof thereof.

### COUNT FOUR
### CONSPIRACY

39. In response to Paragraph 39, Defendants incorporate by reference as if fully restated herein their response to each and every one of the foregoing paragraphs of this Answer and all of their affirmative defenses.

40. Defendants deny the allegations in paragraph 40 of the Complaint and demand strict proof thereof.

41. Defendants deny the allegations in paragraph 41 of the Complaint and demand strict proof thereof.

### DAMAGES

42. In response to Paragraph 42, Defendants incorporate by reference as if fully restated herein their response to each and every one of the foregoing paragraphs of this Answer and all of their affirmative defenses.

43. Defendants deny the allegations in paragraph 43(a)-(e) of the Complaint and demand strict proof thereof.

44. Defendants deny the allegations in paragraph 44(a)-(c) of the Complaint and demand strict proof thereof.

### AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim for which relief can be granted.

2. ICC is estopped from asserting these claims.

3. ICC has waived any claims.

4. ICC's claims are barred by the failure to satisfy contractual conditions precedent and the failure to allege compliance with conditions precedent.

5. ICC's claims are barred by the applicable statutes of limitation and laches.

6. ICC's claims are barred, in whole or in part, by the doctrine of ratification, acquiescence, estoppel, and unclean hands.

7. ICC's Complaint is barred by the doctrines of accord, satisfaction, payment and/or release.

8. Plaintiff Oke Ananaba is not a proper party to this case. He lacks standing to assert the claims in the Complaint.

9. Defendants deny the material allegations of the Complaint and demands strict proof thereof.

10. Defendants are not the proximate cause of ICC's alleged losses.

11. ICC was contributorily negligent.

12. ICC failed to mitigate its alleged damages and, in addition, affirmatively incurred damages for which it is solely responsible.

13. Defendants did not breach any duty allegedly owed to ICC. Any and all duties owed to ICC were fully and faithfully performed by Defendants.

14. E-D Capital acted at all times within the terms and conditions of the agreement between it and ICC.

15. ICC's claims are barred by the statute of frauds and/or the parol evidence rule.

16. ICC is not entitled to attorneys' fees as a matter of law.

17. ICC may not recover punitive damages, as the recovery of such damages is not permitted under applicable state and federal laws and the facts of this case.

18. Defendants raise all constitutional defenses to ICC's claims for punitive damages.

Respectfully submitted,

/s/John N. Bolus
Luther M. Dorr, Jr.
Melinda J. Lucas
John N. Bolus

Attorneys for Duncan Williams, Inc. and
E-D Capital, Inc.


**OF COUNSEL:**
**Maynard, Cooper & Gale, P.C.**
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: 205.254.1000
Facsimile: 205.254.1999

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the above and foregoing upon all parties to this cause by depositing a copy of the same in the United States mail, first-class postage prepaid this the 3rd day of May, 2006, to the following:

M. Adam Jones
Morris, Cary, Andrews, Talmadge, Jones & Driggers, LLC
P.O. Box 1649
3334 Ross Clark Circle
Dothan, AL  36302

Shane Seaborn
P.O. Box 688
Clayton, AL  36016


/s/John N. Bolus
OF COUNSEL

May 6, 2004

Investors Capital Corporation
221 East Broad Street
Eufaula, Alabama 36027
Attn: Mr. Robert R. Weeks, Jr.

Re: Purchase by E-D Capital, Inc. of Libor Floater Program from Investors Capital Corporation

Dear Mr. Weeks,

E-D Capital, Inc. ("Purchaser") and Investors Capital Corporation ("Seller") intend to enter into an arrangement whereby Purchaser will purchase from Seller certain mortgage loans originated by Seller and transfer such mortgage loans to certain third parties (each, a "Third Party"). Purchaser may be required to provide Seller the name of a Third Party in connection with the transactions contemplated herein. Seller and Purchaser understand and agree that the identity of said Third Party, together with Purchaser's relationship therewith, is confidential and is proprietary information solely held by Purchaser, and Seller hereby agrees not to circumvent any agreement with Purchaser relating to said Third Party as set forth herein.

Accordingly, Purchaser may reveal to Seller the name of a Third Party in consideration for which Seller agrees that with respect to said Third Parties (a) the Seller will not, itself or in conjunction with any other individual or entity, directly or indirectly, communicate with said Third Parties for the purpose of buying or selling mortgage loans or any interest therein without the prior written approval of Purchaser, and (b) Seller will not, itself or in conjunction with any other individual or entity, directly or indirectly, buy or sell mortgage loans or any interest therein to said Third Parties except through Purchaser. For purposes of this Agreement, Seller shall include its officers, directors, employees and agents; its successors and assigns; any of its present or future affiliates; and the officers, directors, employees and agents of those affiliates.

Without the prior written consent of Purchaser, Seller will not disclose to any person, unless otherwise required by law in the opinion of Seller's counsel and upon prior written notice to Purchaser: (a) the fact that a Third Party's name has been made available to it or that it has conducted any review of a Third Party; (b) the fact that any discussions or negotiations are taking place with Purchaser concerning a Third Party; or (c) any of the terms, conditions or other facts with respect to a Third Party, including the status thereof and whether or not Purchaser has made a bid, proposal or offer in connection therewith. The term "person" as used in this Agreement shall be broadly interpreted to include, without limitation, any individual, corporation, partnership, joint venture, association, joint stock company, trust, limited liability company, unincorporated organization or government or any agency or political subdivision thereof.

Seller and Purchaser also agree that the confidentiality and non circumvention set forth in this Agreement will survive after the termination of this Agreement.

EXHIBIT A

Seller agrees to give Purchaser the right of first refusal on all loans that conform to the LIBOR Floater Commercial Loan Program attached hereto as **Exhibit A**.

Seller understands and agrees that no failure or delay by Purchaser in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

Agreement shall be binding for three (3) years from the date of execution and will be automatically renewable in one (1) year terms unless written notice of termination is delivered to Seller sixty (60) days prior to the expiration of Agreement.

Termination of Agreement can occur by the mutual accord of both Seller and Purchaser if done so in writing with sixty (60) days notice.
The terms of this Agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the laws of the State of Tennessee, without regard to conflicts of laws. Seller agrees to indemnify and hold harmless Purchaser from any damage, loss, cost or liability (including legal fees and the cost of enforcing this indemnity) arising out of or resulting from any (a) unauthorized use or disclosure by Seller of a Third Party's name and (b) any breach by Seller of any provision of this Agreement. Seller acknowledges that money damages would be both incalculable and an insufficient remedy for any breach of this Agreement by Seller and that any such breach would cause Purchaser irreparable harm. Accordingly, Seller agrees that in the event of any breach or threatened breach of this Agreement, Purchaser, in addition to any other remedies at law or in equity it may have, shall be entitled, without requirement of posting a bond or other security, to equitable relief, including injunctive relief and specific performance, without proof of actual damages.

Please acknowledge your acceptance to the terms and conditions of this Agreement by signing in the appropriate space below and returning the same to the undersigned. Telecopy signatures shall be deemed valid and binding to the same extent as the original.

Sincerely,

Franklin F. Reid
Vice President

Agreed to and Accepted By:
Investors Capital Corporation
By: 
Robert R. Weeks, Jr.
President

E-D Capital, Inc.
By: 
Franklin F. Reid
Vice President

## EXHIBIT A

| LIBOR Floater Commercial Loan Program - IC | |
|---|---|
| Interest Rate: | |
| > 680 Credit Score | 30 Day LIBOR + 400 BPS (Adjusts Monthly) |
| > 620 Credit Score | 30 Day LIBOR + 500 BPS (Adjusts Monthly) |
| Interest Rate Floor | Start Rate |
| Annual Cap | 3% |
| Lifetime Cap | 6% |
| Minimum Loan Size | 250,000 |
| Maximum Loan Size | 5,000,000 |
| Aggregate Debt Per Borrower/Entity | 5,000,000 |
| Maximum Properties Per Loan | One (1) Property Per Loan |
| Purpose | Purchase, Refinance, and Cash-Out/Refinance |
| Multi-Tenant | Required |
| Property Types | Multi-Family Apartments, Retail Shopping Centers, Offices and Mini-Storages |
| Minimum Units | Five (5) |
| Geographic Coverage | All States Excluding Alaska and Hawaii - Population Must Be Sufficient to Support Project Size |
| Maximum LTV: | |
| Purchase | 80% - Lesser of LTC and LTV |
| Refinance | 75% LTV |
| Cash-Out/Refinance | 70% LTV |
| Maximum CLTV: | |
| Purchase | 90% - Lesser of CLTC and CLTV |
| Refinance | 85% |
| Cash-Out/Refinance: | 80% |
| Minimum Equity Required: | |
| Purchase | 10% |
| Refinance | 15% |
| Cash-Out/Refinance: | 20% |
| Seller Secondary Financing | Minimum 5% - Maximum 10% - Minimum 5 Year Term |
| Minimum DSCR: | |
| Purchase and Refinance | 1.25% |
| Cash-Out/Refinance | 1.35% |
| Personal DTI | Not Calculated But Must Be Sufficient to Pay Debt |
| Minimum Occupancy Percentage | 75% |
| Minimum Occupancy Percentage (Self-Storage) | 60% |
| Recourse | Full Recourse Required |
| Borrower's Credit Score | Minimum 620 - Middle of Three/Lesser of Two |
| Hard Lock-Out and Prepayment Penalty | 5 Year Hard Lock-Out and 7%, 6%, 5%, 4%, 3%, 2%, 1% Each Year Thereafter |
| Assumption Fee | 4% (If Approved by Investor) |
| Terms | 15/15, 20/20, 25/25, 30/30 - Based on 75% of Economic Life |
| Origination Fee to Originator | Maximum 1% Origination Fee Incorporated into Loan |
| Ownership | Minimum 2 Years for Cash-Out/Refinance |
| Documentation | Full Documentation on Properties, Guarantors and Entities |
| Verifications | All Documents Must Be Verified and Validated |
| Interest Calculation | 365/360 |
| Escrows | Taxes and Insurance Required |
| Leaseholds | Not Allowed |
| Appraisal | MAI Appraisal Required and FIRREA/USPAP Compliant |
| Environmental | Phase I Study Required |
| Narrative | Required |
| Rent Rolls/Leases | Required |
| NOI | Minimum Two (2) Years and Projected |

**Exceptions to Guidelines Will Be Reviewed on a Case-By-Case Basis**

5-5-04
Investors Capital