May 5, 2004

Investors Capital Corporation
221 East Broad Street
Eufaula, Alabama 36027
Attn: Mr. Robert R. Weeks, Jr.

Re: Purchase by E-D Capital, Inc. of Libor Floater Program from Investors Capital Corporation

Dear Mr. Weeks,

E-D Capital, Inc. ("Purchaser") and Investors Capital Corporation ("Seller") intend to enter into an arrangement whereby Purchaser will purchase from Seller certain mortgage loans originated by Seller and transfer such mortgage loans to certain third parties (each, a "Third Party"). Purchaser may be required to provide Seller the name of a Third Party in connection with the transactions contemplated herein. Seller and Purchaser understand and agree that the identity of said Third Party, together with Purchaser's relationship therewith, is confidential and is proprietary information solely held by Purchaser, and Seller hereby agrees not to circumvent any agreement with Purchaser relating to said Third Party as set forth herein.

Accordingly, Purchaser may reveal to Seller the name of a Third Party in consideration for which Seller agrees that with respect to said Third Parties (a) the Seller will not, itself or in conjunction with any other individual or entity, directly or indirectly, communicate with said Third Parties for the purpose of buying or selling mortgage loans or any interest therein without the prior written approval of Purchaser, and (b) Seller will not, itself or in conjunction with any other individual or entity, directly or indirectly, buy or sell mortgage loans or any interest therein to said Third Parties except through Purchaser. For purposes of this Agreement, Seller shall include its officers, directors, employees and agents; its successors and assigns; any of its present or future affiliates; and the officers, directors, employees and agents of those affiliates.

Without the prior written consent of Purchaser, Seller will not disclose to any person, unless otherwise required by law in the opinion of Seller's counsel and upon prior written notice to Purchaser: (a) the fact that a Third Party's name has been made available to it or that it has conducted any review of a Third Party; (b) the fact that any discussions or negotiations are taking place with Purchaser concerning a Third Party; or (c) any of the terms, conditions or other facts with respect to a Third Party, including the status thereof and whether or not Purchaser has made a bid, proposal or offer in connection therewith. The term "person" as used in this Agreement shall be broadly interpreted to include, without limitation, any individual, corporation, partnership, joint venture, association, joint stock company, trust, limited liability company, unincorporated organization or government or any agency or political subdivision thereof.

Seller and Purchaser also agree that the confidentiality and non circumvention set forth in this Agreement will survive after the termination of this Agreement.

EXHIBIT A

Seller agrees to give Purchaser the right of first refusal on all loans that conform to the LIBOR Floater Commercial Loan Program attached hereto as Exhibit A.

Seller understands and agrees that no failure or delay by Purchaser in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

Agreement shall be binding for three (3) years from the date of execution and will be automatically renewable in one (1) year terms unless written notice of termination is delivered to Seller sixty (60) days prior to the expiration of Agreement.

Termination of Agreement can occur by the mutual accord of both Seller and Purchaser if done so in writing with sixty (60) days notice.

The terms of this Agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the laws of the State of Tennessee, without regard to conflicts of laws. Seller agrees to indemnify and hold harmless Purchaser from any damage, loss, cost or liability (including legal fees and the cost of enforcing this indemnity) arising out of or resulting from any (a) unauthorized use or disclosure by Seller of a Third Party's name and (b) any breach by Seller of any provision of this Agreement. Seller acknowledges that money damages would be both incalculable and an insufficient remedy for any breach of this Agreement by Seller and that any such breach would cause Purchaser irreparable harm. Accordingly, Seller agrees that in the event of any breach or threatened breach of this Agreement, Purchaser, in addition to any other remedies at law or in equity it may have, shall be entitled, without requirement of posting a bond or other security, to equitable relief, including injunctive relief and specific performance, without proof of actual damages.

Please acknowledge your acceptance to the terms and conditions of this Agreement by signing in the appropriate space below and returning the same to the undersigned. Telecopy signatures shall be deemed valid and binding to the same extent as the original.

Sincerely,

Franklin F. Reid
Vice President

Agreed to and Accepted By:
Investors Capital Corporation
By: 
Robert R. Weeks, Jr.
President

E-D Capital, Inc.
By:
Franklin F. Reid
Vice President

## EXHIBIT A

| LIBOR Floater Commercial Loan Program - IC | |
|---|---|
| Interest Rate: | |
| > 680 Credit Score | 30 Day LIBOR + 250 BPS (Adjusts Monthly) |
| > 620 Credit Score | 30 Day LIBOR + 350 BPS (Adjusts Monthly) |
| Interest Rate Floor | Start Rate |
| Annual Cap | 1% |
| Lifetime Cap | 6% |
| Minimum Loan Size | 250,000 |
| Maximum Loan Size | 5,000,000 |
| Aggregate Debt Per Borrower/Entity | 7,000,000 |
| Maximum Properties Per Loan | One (1) Property Per Loan |
| Purpose | Purchase, Refinance, and Cash-Out/Refinance |
| Multi-Tenant | Required |
| Property Types | Multi-Family Apartments, Retail Shopping Centers, Offices and Mini-Storage |
| Minimum Units | Five (5) |
| Geographic Coverage | All States Excluding Alaska and Hawaii - Population Must Be Sufficient to Support Project Size |
| Maximum LTV: | |
| Purchase | 80% - Lesser of LTC and LTV |
| Refinance | 75% LTV |
| Cash-Out/Refinance | 70% LTV |
| Maximum CLTV: | |
| Purchase | 90% - Lesser of CLTC and CLTV |
| Refinance | 85% |
| Cash-Out/Refinance | 80% |
| Minimum Equity Required: | |
| Purchase | 10% |
| Refinance | 15% |
| Cash-Out/Refinance | 20% |
| Seller Secondary Financing | Minimum 5% - Maximum 10% - Minimum 5 Year Term |
| Minimum DSCR: | |
| Purchase and Refinance | 1.25% |
| Cash-Out/Refinance | 1.35% |
| Personal DTI | Not Calculated but Must Be Sufficient to Pay DSM |
| Minimum Occupancy Percentage | 75% |
| Minimum Occupancy Percentage (Self-Storage) | 65% |
| Recourse | Full Recourse Required |
| Borrower's Credit Score | Minimum 620 - Middle of Three/Lesser of Two |
| Hard Lock-Out and Prepayment Penalty | 5 Year Hard Lock-Out and 7%, 6%, 5%, 4%, 3%, 2%, 1% Each Year Thereafter |
| Assumption Fee | 1% (If Approved by Investor) |
| Yields | 10/15, 20/25, 25/25, 30/30 - Based on 75% of Economic Life |
| Origination Fee to Originator | Maximum 1% Origination Fee Incorporated Into Loan |
| Ownership | Minimum 2 Years for Cash-Out/Refinance |
| Documentation | Full Documentation on Properties, Guarantors and Entities |
| Verifications | All Documents Must Be Verified and Validated |
| Interest Calculation | 365/60 |
| Escrows | Taxes and Insurance Required |
| Leaseholds | Not Allowed |
| Appraisal | MAI Appraisal Required and FIRREA/USPAP Compliant |
| Environmental | Phase I Study Required |
| Narrative | Required |
| Rent Roll/Leases | Required |
| NOI | Minimum Two (2) Years and Projected |

**Exceptions to Guidelines Will Be Reviewed on a Case-By-Case Basis**

5-5-04
Investors Capital